[Civ. No. 17172. First Dist., Div. Two. Oct. 19, 1956.]

ALEX SLOBODEN, Respondent, v. TIME OIL COMPANY
(a Corporation), Appellant.

*Assigned by Chairman of Judicial Council.

Frederick M. Van Sicklen and James C. Calkins for Appellant.

Hoberg & Finger and Russell F. King for Respondent.

DRAPER, J. pro tem.*—Plaintiff had judgment, following verdict of a jury, in this personal injury action. Defendant appeals, assigning as error the giving of an instruction upon res ipsa loquitur. This is the second appeal in this case, an order granting plaintiff's motion for new trial having been previously affirmed. (*Sloboden* v. *Time Oil Co.*, 131 Cal. App.2d 557 [281 P.2d 85].)

Defendant-appellant is a motor carrier of petroleum products. Welding repairs upon its tank trucks and trailers were performed from time to time by Richmond Tank Car Company, which employed respondent as a welder. Welding of the tanks carried by these vehicles could be safely performed only after the containers had been cleaned, so as to remove explosive gases and any residue of fuel.

Until 1949, appellant's tanks were cleaned by Richmond before it did the welding jobs. In that year, appellant acquired a steamer and made an oral agreement with Richmond under which appellant was to clean its own tanks before sending them to Richmond for welding.

The testimony is in conflict as to the terms of this oral

*Assigned by Chairman of Judicial Council.

agreement. There was testimony that appellant desired to do the cleaning itself to save money, and advised Richmond that appellant would steam clean each tank and prepare it for welding. Appellant, on the contrary, offered evidence that it had undertaken the steaming only to accommodate Richmond, and that the latter still was to insure that the tanks were prepared for welding. There was testimony that a proper test would require removal of the dome of the tank and inspection of the interior by a man entering the tank for that purpose. Only this method would reveal possible patches of rust and scale, behind which pockets of fuel, sufficient to cause explosion, could remain. Richmond contended that since the agreement was designed to reduce the amount of work to be paid for by appellant, this type of testing was not to be performed by Richmond. Appellant contends that Richmond, by the agreement, assumed full responsibility for complete testing, if required by good welding practice.

It is undisputed that Richmond did, before welding, test each tank of appellant with a "snifter." This device is inserted into the tank, extending but a short distance from the opening thereof. Richmond contends that the "snifter" test is superficial, and was conducted only to assure that the tank delivered was not, through error, one which had not been subjected to any cleaning process at all.

In 1952, a tank trailer which had been steamed by appellant was delivered to Richmond for welding. A fellow employee of respondent made the "snifter" test, which was negative. Respondent then commenced welding on the exterior of the tank. The first weld was completed without incident, but in the course of the second weld the tank exploded, causing serious injury to respondent.

■ The court instructed the jury:

"If, and only in the event, you should find that there was an accidental occurrence as claimed by the plaintiff namely: that the defendants undertook to furnish to the plaintiff's employer, Richmond Tank Company, a tank steam cleaned and prepared for welding, and if you should find that from the accidental event herein as a proximate result thereof, plaintiff has suffered injury, then you are instructed as follows: an inference arises that the proximate cause of the occurrence in question was some negligent conduct on the part of the defendants."

Then followed the remainder of the instruction set forth

in California Jury Instructions—Civil 4th edition (BAJI) 206, together with Number 206C.

If the oral contract between appellant and Richmond required the former to deliver the tank trailer "prepared for welding," there can be no question that the doctrine of res ipsa loquitur applies. (*Hinds* v. *Wheadon*, 19 Cal.2d 458 [121 P.2d 724]; and see full discussion of the modern California rule in *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436 [247 P.2d 344] and *Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258].) The conflict in the evidence as to the terms of this agreement involved only the language used by the parties, rather than its construction, and thus was a question of fact. The claim that Richmond was negligent must, on the record, be based upon its failure to thoroughly test the tank and, if necessary, clean it further, before welding it. But if appellant, by its agreement, had undertaken to supply the tank prepared for welding, no such obligation rested upon Richmond. Instruction upon res ipsa loquitur, conditioned that it shall be applied by the jury only upon its finding of a fact necessary to invoking of the doctrine, has been approved. (*Hardin* v. *San Jose City Lines, Inc.*, 41 Cal.2d 432 [260 P.2d 63].)

If the instruction clearly advised the jury that the doctrine should be applied only if the jury found that the agreement was to furnish tanks "prepared for welding," it was proper.

The instruction is somewhat confusing in referring to defendant's undertaking as an "accidental occurrence," and is therefore not to be recommended. However, the record here makes plain that the jury was not confused. After almost an hour's deliberation, the jury asked the court for a reading of "the testimony of the oral agreement between the Time Oil Company and the Richmond Tank Car Company." The colloquy among judge and jurors made clear that the reference was to the 1949 agreement above referred to. The testimony requested was read. It is plain that the jury recognized the importance of the agreement. Thus the error in the instruction, if any, was not prejudicial.

Appellant also argues that the res ipsa loquitur instruction was erroneous because the tank was not in the "exclusive control" of appellant. But the evidence seems clear that the explosion was caused by explosive gases inside the tank. Richmond's employees did not touch the tank's interior. Further, appellant's employees who delivered the tank to Richmond remained near it. Even if there were a full re-

linquishment of control to Richmond, it does not follow that the doctrine cannot apply. Res ipsa loquitur is based in great degree upon probabilities. As is clear from the full discussion in *Hardin* v. *San Jose City Lines, Inc., supra,* and *Zentz* v. *Coca Cola Bottling Co., supra,* it is "a simple, understandable rule of circumstantial evidence, with a sound background of common sense and human experience," rather than "a rigid legal formula" designed largely for exclusionary purposes. (*Ybarra* v. *Spangard, supra,* 25 Cal.2d at p. 489.) Applying the reasoning of these decisions, we cannot distinguish this case from *Hinds* v. *Wheadon, supra.*

We find no error in the questioned instruction. The judgment is affirmed.

Nourse, P. J., and Kaufman, J., concurred.