**William R. BOYLE, Plaintiff,**

v.

**CSX TRANSPORTATION, INC., et al., Defendants.**

Civ. A. No. 3:91–0659.

United States District Court, S.D. West Virginia, at Huntington.

July 17, 1992.

Menis E. Ketchum, Greene, Ketchum, Bailey & Tweel, Huntington, W.Va., for William R. Boyle.

Marc E. Williams, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., for CSX Transp., Inc.

P. Michael Pleska, Bowles, Rice, McDavid, Graff & Love, Charleston, W.Va., for Armstrong–Blum Mfg. Co.

## MEMORANDUM ORDER

MAURICE G. TAYLOR, Jr., United States Magistrate Judge.

Presently pending before the Court is plaintiff's motion seeking an order requiring the defendant, CSX Transportation, Inc. (hereinafter "CSX"), to answer interrogatory number 20, an interrogatory which seeks to flesh out details concerning surveillance of plaintiff conducted by CSX or investigators in its employ. The dispute with regard to defendant's responses to the remaining interrogatories which were the subject of plaintiff's motion has been resolved by the parties.

In resolving the issues raised by the parties, the Court does not, of course, write on a clean slate, and it would, perhaps, be helpful to trace the evolution of the principles applied in this Division in discovery disputes involving surveillance.

Surveillance material has been subject to discovery in this division for many years, the Court first ordering its production in a case involving Norfolk and Western Railway Company, *Smith v. Norfolk and Western Railway Company*, Civil Action No. 77–3257 (decided February 4, 1981). In 1985, in a case involving CSX in which it was represented by the firm representing it in this case, *Hesson v. The Chesapeake and Ohio Railway Company*, Civil Action No. 83–3349 (decided May 31, 1985), the Court ordered defendant to "make available for inspection and copying all films and tapes taken in connection with surveillance of plaintiff," and to answer interrogatories asking for the names and addresses of "any person conducting surveillance," the "dates on which films or videotapes were taken" and seeking to determine

whether "a written report exists with respect to such surveillance." Except for changes implemented with respect to the timing of responses to discovery requests, the orders entered in these two cases have been followed in ordering production of surveillance materials and information. In earlier decisions, the Court permitted the surveilling party to withhold surveillance material, including the fact of its existence, until all discovery had been completed. Recognizing, however, that disclosure at an earlier stage in the proceedings was required if the surveilled party was to have any means of testing for distorted, misleading or false evidence, and believing that the surveilling party's interests could be protected by delaying discovery responses until such time as that party had an opportunity to depose the plaintiff, the Court in *Hunt v. CSX Transportation, Inc.*, Civil Action No. 3:91–0467 (decided September 19, 1991), ordered that disclosure of surveillance material and information be made following the passage of a reasonable period of time within which defendant was to depose those individuals who had been subject to surveillance (seventy days following the filing of the complaint in *Hunt*).

■ Once it is conceded, as it must be, that not only those surveilled may be tempted to alter the truth, but that those conducting the surveillance may be subject to the same temptation,[1] it becomes clear that surveillance information and material must be subject to discovery.[2] Moreover,

it cannot reasonably be argued that possibilities for impeachment presented by such evidence or, to the extent applicable, the work-product doctrine preclude discovery. *See,* 8 Wright & Miller, Federal Practice and Procedure: Civil § 2015 (1970 ed.); *Martin v. Long Island Rail Road Company,* 63 F.R.D. 53, 55 (E.D.N.Y.1974). Finally, account must be taken of the fact that, if the adversarial process is to function efficiently, discovery must be accomplished at a time when opportunity exists to test, through further discovery, the manner and means by which the surveillance was conducted. Accordingly, in cases pending in this division in which surveillance material and information are sought in discovery, the surveilling party shall, after the passage of sufficient time for deposing those surveilled, make available for inspection and copying all[3] films and tapes taken in connection with the surveillance. If inquiry is made, that party shall also provide the name and address of any individuals conducting the surveillance, the date or dates on which films or videotapes were taken and an indication as to whether or not a written report exists with respect to such surveillance. These guidelines are not intended to require surveilling parties to complete surveillance at any particular stage of the proceeding; however, if additional surveillance is conducted following provision of the information and materials required herein, a surveilling party shall, forthwith, supplement previous responses.

1. *See, Snead v. American Export–Isbrandtsen Lines, Inc.,* 59 F.R.D. 148 (E.D.Pa.1973); *Daniels v. National Railroad Passenger Corporation,* 110 F.R.D. 160 (S.D.N.Y.1986); *Martin v. Long Island Rail Road Company,* 63 F.R.D. 53 (E.D.N.Y.1974); *Carlton v. National Railroad Passenger Corporation,* 7 Fed.R.Serv.3d 79, 1987 WL 7607 (E.D.Pa.1987). *See also, Forbes v. Hawaiian Tug & Barge Corp.,* 125 F.R.D. 505 (D.Haw.1989); *DiGiacobbe v. National Railroad Passenger Corporation,* 1987 WL 11227, 1987 U.S.Dist.Lexis 4029 (E.D.Pa.1987); *Ancona v. Net Realty Holding Trust Co.,* —— N.Y.2d ——, 583 N.Y.S.2d 784 (1992).

2. If, as is apparent, surveillance material is subject to alteration or distortion, then it simply makes no sense to conclude, as some courts have, that "[i]n those cases ... in which knowledge that a defendant does or does not possess

motion pictures of the plaintiff would influence the testimony of the plaintiff or his witnesses, the possibility that the defendant may possess such motion pictures would probably tend to make the witnesses more careful. In those cases where the knowledge would not influence their testimony, the information would have little or no value to the plaintiff." *Hikel v. Abousy,* 41 F.R.D. 152, 155 (D.Md.1966). Altered or distorted surveillance material, if the alteration or distortion is to be exposed, would need to be provided to the plaintiff even though knowledge of the existence of the surveillance would not have altered plaintiff's testimony.

3. *See, Daniels v. National Railroad Passenger Corporation,* 110 F.R.D. 160, 161 (S.D.N.Y.1986); *Collins v. The Crosby Group, Inc.* 551 So.2d 42 (Ct.App.La.1989). *See also, Delvaux v. Ford Motor Company,* 518 F.Supp. 1249, 1252 (E.D.Wis. 1981).

With respect to William R. Boyle's motion to compel, defendant is ORDERED to answer interrogatory number 20, including all of its subparts. Questions having arisen at the hearing on the motion concerning whether all films or videos were produced, defendant shall provide plaintiff with copies of all surveillance movies, videos or pictures not previously produced. Defendant shall respond as herein ordered within seven days from the date of entry of this Order.